## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHARON PETTWAY, and<br>MARSHA HUBBARD<br><br>individually and on behalf of all<br>others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>HARMON LAW OFFICES, P.C.<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.
03-10932-RCL

### FIRST AMENDED CLASS ACTION COMPLAINT

### I. Introduction

1.     This class action seeks relief for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (hereinafter "FDCPA"), and state law. Defendant routinely attempts to collect and does collect foreclosure attorney fees that are unreasonable and not legally due from the mortgagor.  Harmon Law also routinely attempts to collect and does collect other fees, including sheriff service fees and certified mail fees in amounts that exceed the actual cost to Harmon Law of such items.  The fees, costs, and charges are demanded and collected in the context of reinstatement demands and loan payoffs.  These collection activities are prohibited by the FDCPA.  Ms. Pettway, Ms. Hubbard and the classes they seek to represent also request relief for misrepresentation, and unjust enrichment.

1

2.      The unlawful fees and charges demanded by Harmon Law increase the amounts that financially strapped Massachusetts homeowners must raise to reinstate or payoff their mortgages and thereby avoid foreclosure. Harmon Law's unlawful practices exacerbate mortgage defaults and contribute to the avoidable loss of consumers' homes.

## II. Jurisdiction

3.      Jurisdiction arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337(a), together with the pendent jurisdiction of the court. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

## III. Parties

4.      Ms. Sharon D. Pettway is an individual who resides at 45 Brent Street, Boston, Massachusetts, 02124.

5.      Ms. Marsha Hubbard is an individual who resides at 33 Furnace Ave., Quincy, Massachusetts 02169.

6.      Defendant, Harmon Law Offices, P.C. ("Harmon Law") is a professional corporation duly organized under Massachusetts law, with a principal place of business at 150 California Street, Newton, Middlesex County, Massachusetts.

7.      Harmon Law regularly attempts to collect debts alleged to be due another and is a debt collector as defined by 15 U.S.C. §1692a(6).

2

## IV. Factual Allegations

*Sharon Pettway*

8.      At all times relevant hereto, Harmon Law, through its associated attorneys and agents, represented various mortgage lenders and servicers in connection with the collection of amounts due under certain mortgages, including State Street Bank & Trust Company as trustee ("State Street"), the holder of Ms. Pettway's mortgage.

9.      At all times relevant hereto, defendant Harmon Law was attempting to collect an alleged debt to State Street. The alleged debt was incurred by Ms. Pettway for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

10.     On or about October 4, 2002, Ms. Pettway received a letter from ABN AMRO, the mortgage loan servicer for State Street, advising her that her account had been forwarded to its attorney to initiate foreclosure proceedings because of a default in payments.

11.     On or about October 14, 2002, Harmon Law sent a Notice of Intention to Foreclose and Acceleration of Mortgage Note to Ms. Pettway. The Notice stated that as of that date there was an amount outstanding on the mortgage of $67,696.40. This amount included $62,939.69 in principal and $4,756.71 in interest and other charges.

12.     A true and correct copy of the Notice of Intention to Foreclose dated October 14, 2002, from Harmon Law to Ms. Pettway is attached hereto and labeled Exhibit A. The Notice states that the amount needed to reinstate "changes daily" and that Ms. Pettway could call Harmon Law if she wished to obtain the exact amount of the debt owing in order to reinstate or payoff the loan.

3

13.     On or about October 23, 2002, Harmon Law sent a pay-off letter, which included a summary of the outstanding charges.

14.     According to the pay-off statement, the following amounts were owed:

| | |
|---|---|
| Principal Balance | $62,939.69 |
| Interest to 10/31/02 | $ 3,747.77 |
| Escrow Advance Balance | $ 1,691.73 |
| Accumulated Late Charge | $ 61.64 |
| Inspections | $ 65.00 |
| Recording Fees | $ 30.00 |
| VA Appraisal | $ 350.00 |
| Legal Fees and Costs | $ 2,237.25 |

15.     A true and correct copy of the letter dated October 23, 2002, from Harmon Law to Ms. Pettway is attached hereto and labeled Exhibit B.

16.     Total interest and other charges asserted in the October 23, 2002 letter is $8,183.39. Thus, in the nine (9) days between October 14, 2002, and October 23, 2002, Harmon Law asserted that an additional $3,426.68 had become due from Ms. Pettway on the mortgage.

17.     On information and belief, outstanding foreclosure legal fees and costs as of October 23, 2002 on Ms. Pettway's account were far less than $2,237.25.  On October 23, 2002, no action to foreclose on the mortgage had yet been taken.

4

18.    On or about October 29, 2002, Harmon Law sent a reinstatement letter to Ms. Pettway, which itemized the amounts needed to bring her account current, and included legal fees and costs of $2,237.25.

19.    A true and correct copy of the letter dated October 29, 2002, from Harmon Law to Ms. Pettway is attached hereto and labeled Exhibit C.

20.    On or about October 31, 2002, Harmon Law sent to Ms. Pettway an Order of Notice pursuant to the filing of a complaint for authority to foreclose a mortgage under the Soldiers' and Sailors' Civil Relief Act of 1940.  The complaint was filed on October 25, 2002.

21.    On or about November 7, 2002, Ms. Pettway sent a letter to Harmon Law requesting a breakdown of the legal fees and costs sought in the pay-off letter.

22.    On or about November 15, 2002, Harmon Law sent a letter to Ms. Pettway which contained the following itemization of the legal fees and costs:

Legal Fees...................................................... $1,100.00

Costs:

Municipal Lien Certificate............................$  25.00

Filing Fees.................................................... $210.00

Title Searches............................................... $396.25

Recording Fees ............................................$  97.00

Publications................................................... $280.00

Sheriff Service ..............................................$ 100.00

Certified Mail................................................$  24.00

Overnight Mail Services.................................$    5.00

23.     A true and correct copy of the letter dated November 15, 2002, from Harmon Law to Ms. Pettway is attached hereto and labeled Exhibit D.

24.     On or about November 22, 2002, Harmon Law sent a letter to Ms. Pettway with an itemization of the amount needed to reinstate her mortgage by bringing her payments current.

25.     A true and correct copy of the letter dated November 22, 2002, from Harmon Law to Ms. Pettway is attached hereto and labeled Exhibit E.

26.     According to the itemization in that letter, the legal fees and costs as of that date were $3,645.93.

27.     On information and belief, outstanding foreclosure legal fees and costs as of November 22, 2002, on Ms. Pettway's account were far less than $3,645.93.

28.     On or about December 9, 2002, Harmon Law sent a letter to Ms. Pettway's authorized representative with an itemization of the amount needed to reinstate her mortgage.

29.     A true and correct copy of the letter dated December 9, 2002, from Harmon Law to Ms. Pettway is attached hereto and labeled Exhibit F.

30.     According to the itemization in that letter, the legal fees and costs as of that date were $4,020.46.

6

31.    On information and belief, outstanding foreclosure legal fees and costs as of December 9, 2002, on Ms. Pettway's account were far less than $4,020.46.

32.    Although Ms. Pettway did not agree that Harmon Law's various pay-off quotes and pay-off figures were accurate, on or about December 9, 2002, she made a payment of $12,153.52 to Harmon Law to reinstate her mortgage. This payment included at least $4,020.46 in legal fees and costs.

33.    Ms. Pettway made such payment under duress and without the advice of counsel, solely in order to prevent continued efforts by ABN Amro and Harmon Law to foreclose on her family's home.

34.    Ms. Pettway obtained the funds to make this payment with great difficulty by borrowing from family members.

35.    On information and belief, Harmon Law has no time records or other back-up information necessary to support the amount of fees it charged to Ms. Pettway.

36.    On information and belief, Harmon Law paid far less than the $100 demanded for sheriff service.

7

37.    On information and belief, Harmon Law paid far less than the $24 demanded for certified mail.

38.    On information and belief, Harmon Law consistently demanded foreclosure fees from Ms. Pettway that it had not yet earned as well as foreclosure costs that it had not yet expended, thereby greatly increasing the amount Ms. Pettway was required to raise in order to prevent foreclosure on her home.

39.    On or about January 15, 2003, Ms. Pettway received a refund check from Harmon Law in the amount of $142.38. The letter accompanying the check stated: "A review of your file following the application of your recent payment to this office has indicated that this sum is due to you." No further explanation of the refund was provided.

40.    On or about January 21, 2003, Ms. Pettway received a refund check from Harmon Law in the amount of $95.00. This letter also stated that: "A review of your file following the application of your recent payment to this office has indicated that this sum is due to you." No further explanation of the refund was provided.

41.    The payment of refunds by Harmon Law confirms that the pay-off and reinstatement demands made by Harmon Law were wrong. Even with the refunds, Ms. Pettway was substantially overcharged.

42.    Despite Ms. Pettway's payment to Harmon Law in the amount demanded, ABN AMRO continued to claim that her mortgage was in default. ABN AMRO continued to refuse payments and assess late charges on the account.

43.    On information and belief Harmon Law did not notify ABN AMRO of Ms. Pettway's reinstatement in a timely fashion and did not forward the funds it had received for reinstatement to ABN AMRO.

44.    Ms. Pettway contacted Harmon Law during February 2003, at which time they acknowledged the reinstatement. At that time, ABN AMRO first resumed accepting payments from Ms. Pettway, but did not cancel late charges that had accumulated between December, 2002 and February 2003.

45.    On May 23, 2003, Ms. Pettway sent Harmon Law a demand for relief pursuant to G.L. c. 93A on her own behalf and on behalf of a group of similarly situated individuals. A true and correct copy of that demand is attached hereto and labeled Exhibit G.

46.    Harmon Law's response to the demand was not a reasonable offer of settlement within the meaning of the law.

9

*Marsha Hubbard*

47.    During the period of time relevant to this complaint, Ms. Hubbard owned and resided in the home at 16 Bowdoin Avenue, Dorchester, MA 02121. She owned the home subject to two mortgages.

48.    At all times relevant hereto, Harmon Law, through its associated attorneys and agents, represented various mortgage lenders and servicers in connection with the collection of amounts due under certain mortgages, including Bank One, NA, as trustee ("Bank One") and U.S. Bank, NA, as trustee ("U.S.Bank"), the holders of Ms. Hubbard's two mortgages.

49.    For the purposes of this complaint, Ms. Hubbard's two mortgages will be referred to as the Bank One mortgage and the U.S. Bank mortgage, respectively. Despite an apparent conflict of interest, Harmon Law represented both mortgagees as foreclosing attorney.

50.    At all times relevant hereto, Harmon Law was attempting to collect alleged debts to Bank One and U.S. Bank. The alleged debts were incurred by Ms. Hubbard for personal, family or household purposes and are "debts" as defined by 15 U.S.C. § 1692a(5).

*Collection of the Bank One Mortgage*

51.    On or about January 14, 2003, Harmon Law sent Ms. Hubbard a demand letter with respect to the Bank One mortgage, claiming legal fees and costs due in the total amount of $1,948.21.

52.    A true and correct copy of the January 14, 2003, letter from Harmon Law to Ms. Hubbard is attached hereto and labeled Exhibit H.   The letter states that the amounts needed to reinstate "are calculated through and expire on January 20, 2003."   The letter further states "the quoted legal fees and costs are estimated through the date you have requested," though it provides no reason why actual figures are unavailable.

53.    On or about January 16, 2003, Harmon Law sent Ms. Hubbard a demand letter with respect to the Bank One mortgage that is inconsistent with the January 14, 2003, for reasons including, without limitation, a claim of legal fees and costs in the total amount of $1,997.21.

54.    A true and correct copy of the January 16, 2003, letter from Harmon Law to Ms. Hubbard is attached hereto and labeled Exhibit I.   The letter states that the amounts needed to reinstate "are calculated through and expire on January 31, 2003."   The letter further states "the quoted legal fees and costs are estimated through the date you have requested," though it provides no reason why actual figures are unavailable.

55.    On information and belief, outstanding foreclosure legal fees and costs as of January 16, 2003 on Ms. Hubbard's Bank One account were far less than $1,997.21.

56.    On or about March 25, 2003, Harmon Law sent Ms. Hubbard an additional demand letter with respect to the Bank One mortgage, including a claim of legal fees and costs in the total amount of $4,273.21.

57.    A true and correct copy of the March 25, 2003, letter from Harmon Law to Ms. Hubbard is attached hereto and labeled Exhibit J.   The letter states that the amounts needed to reinstate "are calculated through and expire on March 31, 2003."   The letter

further states "the quoted legal fees and costs are estimated through the date you have requested," though it provides no reason why actual figures are unavailable.

58.     On information and belief, outstanding foreclosure legal fees and costs as of March 25, 2003 on Ms. Hubbard's Bank One account were far less than $4,273.21.

*Collection of U.S. Bank Mortgage*

59.     On or about January 14, 2003, Harmon Law sent Ms. Hubbard a demand letter with respect to the U.S. Bank mortgage, claiming legal fees and costs due in the total amount of $2,024.00.

60.     A true and correct copy of the January 22, 2003, letter from Harmon Law to Ms. Hubbard is attached hereto and labeled Exhibit K.   The letter states that the amounts needed to reinstate "are calculated through and expire on January 31, 2003."   The letter further states "the quoted legal fees and costs are estimated through the date you have requested," though it provides no reason why actual figures are unavailable.

61.     On information and belief, outstanding foreclosure legal fees and costs as of January 14, 2003, on Ms. Hubbard's U.S. Bank account were far less than $2,024.00.

62.     On or about March 10, 2003, Harmon Law sent Ms. Hubbard's authorized representative an additional demand letter with respect to the U.S. Bank mortgage, including a claim of legal fees and costs in the total amount of $4,211.17.

1 2

63. A true and correct copy of the March 10, 2003, letter from Harmon Law to Ms. Hubbard's representative is attached hereto and labeled Exhibit L. The letter states that the amounts needed to reinstate "are calculated through and expire on March 31, 2003." The letter further states "the quoted legal fees and costs are estimated through the date you have requested," though it provides no reason why actual figures are unavailable.

64. On information and belief, outstanding foreclosure legal fees and costs as of March 25, 2003, on Ms. Hubbard's Bank One account were far less than $4,211.17.

65. On information and belief, Harmon Law has no time records or other back-up information necessary to support the amount of fees it demanded from Ms. Hubbard.

66. On information and belief, Harmon Law demanded of Ms. Hubbard $100 for sheriff service in connection with each mortgage, even though its actual costs for sheriff service were less than $100.

67. On information and belief, Harmon Law demanded $24 of Ms. Hubbard for certified mail in connection with each mortgage, even though its actual costs for certified mail were less than $24.

68. On information and belief, Harmon Law consistently demanded foreclosure fees from Ms. Hubbard that it had not yet earned, as well as foreclosure costs that it had not yet expended, thereby greatly increasing the amount Ms. Hubbard was required to raise in order to prevent foreclosure on her home.

69.    In March 2003, Ms. Hubbard sold her home, under duress, in order to prevent foreclosure.  From the proceeds of sale, Ms. Hubbard paid off both the Bank One mortgage and the U.S. Bank mortgage in full, including the total amount of legal fees and costs demanded on each mortgage by Harmon Law.

70.    Ms. Hubbard paid Harmon Law far more in foreclosure fees and costs than was properly due and owing, a total sum of more than $8,400, thereby reducing her proceeds from the distress sale of her home.

71.    Ms. Hubbard cares for two grandchildren and her homebound mother.  Since sale of her home, the remaining proceeds of the sale are the only means of support for Ms. Hubbard and her family.

## V. Policies And Practices Complained Of

72.    On information and belief, Harmon Law has regularly collected or attempted to collect attorney's fees from borrowers even though such fees have not yet been earned and are not legally due and owing.

73.    On information and belief, Harmon Law has regularly collected or attempted to collect attorney's fees from borrowers for legal services that have not yet been provided to the mortgagees who are Harmon Law's clients.

1 4

74.     On information and belief, Harmon Law has regularly collected or attempted to collect attorney's fees from borrowers for legal services, even though it has no records to support those fees.

75.     On information and belief, Harmon Law has regularly collected or attempted to collect attorney's fees in amounts that are not due and owing under the contractual agreements between borrowers such as Ms. Pettway and Ms. Hubbard, and their mortgagees.

76.     On information and belief, Harmon Law has regularly collected or attempted to collect sheriff service fees and certified mail fees in excess of the amount Harmon Law actually pays for these items.

77.     In attempts to collect consumer debt, the FDCPA prohibits, among other things: attempting to collect amounts (including interest, attorney fees, collection costs or expenses) not permitted by law (15 U.S.C. § 1692f(1)); using unfair and unconscionable collection methods (15 U.S.C. § 1692f); giving a false impression of the character, amount, or legal status of the alleged debt (15 U.S.C. § 1692e(2)); using false or deceptive collection methods (15 U.S.C. § 1692e(5)); and making threats to take action which cannot legally be taken (15 U.S.C. § 1692(e)(10)).

78.     Harmon Law's communications to homeowners fail to state "the amount of the debt" as required by 15 U.S.C. § 1692g(a)(1).

79.     M.G.L. c. 93 § 49 prohibits the collection or attempted collection of a debt in an unfair, deceptive or unreasonable manner.

80.     Harmon Law, by falsely and deceptively representing to Ms. Pettway and others like her that its demand for payment of attorney's fees, sheriff's service fees, and certified mail fees was proper under the FDCPA, loan contracts, and state law, violated and continues to violate the rights of hundreds or thousands of consumers and, is engaged in a continuing pattern of unfair and deceptive business practices, in violation of the FDCPA and Massachusetts law.

81.     By seeking to collect such fees, Harmon Law creates substantial hardship on financially strapped homeowners such as Ms. Pettway and Ms. Hubbard, who are seeking to save their homes from foreclosure. Harmon Law's improper fees and costs greatly increase the amount that struggling homeowners have to raise to reinstate their mortgages and thereby preserve their homes.

82.     Ms. Pettway was only able to pay the improper fees and costs demanded by obtaining substantial loans from relatives. Ms. Hubbard was forced to sell her home to pay the amount demanded. Many other homeowners are unable to raise the additional money required by Harmon Law and thereby lose their homes to foreclosure or forced sale.

## VI. CLASS ALLEGATIONS

83.     Ms. Pettway and Ms. Hubbard bring this action on behalf of three classes of all other persons similarly situated.

84.     The first class (the "FDCPA class") consists of all persons who satisfy the following criteria:

    (i)     Massachusetts residents;

    (ii)    from whom Harmon Law collected or attempted to collect

a. attorney's fees for legal work purportedly related to collection, default or foreclosure of a mortgage, which fees were not yet legally due and owing, or

b. foreclosure costs in excess of the amounts expended by Harmon Law;

(iii) whose foreclosures were not completed by Harmon Law in accordance with applicable Massachusetts law because the loan was reinstated or paid off prior to the time of sale;

(iv) during the one year period prior to the filing of the complaint in this action.

85.    The second class (the "attorney's fees overcharge class") consists of all persons who satisfy the following criteria:

(i)    Massachusetts residents;

(ii)   from whom Harmon Law collected attorney's fees for legal work purportedly related to collection, default or foreclosure of a mortgage, which fees were not yet legally due and owing;

(iii)  whose foreclosures were not completed by Harmon Law in accordance with applicable Massachusetts law because the loan was reinstated or paid off prior to the time of sale;

(iv)   during the four year period prior to the filing of the complaint in this action.

86.    The third class (the "foreclosure costs overcharge class") consists of all persons who satisfy the following criteria:

(i)    Massachusetts residents;

(ii)   from whom Harmon Law collected sheriff service fees or certified mail fees in excess of the amounts Harmon Law actually paid for these items;

(iii)  during the four year period prior to the filing of the complaint in this action.

87.    On information and belief, each class is sufficiently numerous that joinder of all members is impractical.

88.    There are questions of law and fact common to each class, which common issues predominate over any issues peculiar to individual class members. The principal common questions include:

a)  Whether Harmon Law seeks to collect attorney's fees which are not yet earned and which are not legally due and owing;

b)  Whether Harmon Law seeks to collect attorney's fees in excess of amounts class members are legally obligated to pay under the loan contract;

c)  Whether Harmon Law seeks to collect sheriff service fees and certified mail fees in excess of the amounts Harmon Law actually pays for these items;

d)  Whether Harmon Law's collection letters falsely represent the nature, character or amount of the debt;

e)  Whether Harmon Law's communications to class members fail to state "the amount of the debt" as required by 15 U.S.C. § 1692g(a)(1).

f)  Whether Harmon Law has intentionally misrepresented the amount of debts owed by homeowners to it by including in its collection letters fees which are not legally due and owing; and

g)  Whether Harmon Law has collected amounts that are not due and owing from class members.

89.    Ms. Pettway and Ms. Hubbard have the same claims as the members of each class. All of the claims are based on the same factual and legal theories.

90.    Ms. Pettway and Ms. Hubbard will fairly and adequately represent the interests of the class members. Ms. Pettway and Ms. Hubbard have retained counsel experienced in prosecuting class actions and in consumer protection matters. There is no reason why Ms. Pettway and Hubbard and their counsel will not vigorously pursue this matter.

18

91.    Certification of these classes pursuant to Fed. R. Civ. P. 23(b)(3) is appropriate.  A class action is the only appropriate means of resolving this controversy because the class members are not aware of their rights. In the absence of a class action, a failure of justice will result.

92.    Certification of these classes under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Harmon Law has acted on grounds generally applicable to each class thereby making appropriate declaratory relief with respect to the classes as a whole.

## Count I: Violations of the FDCPA

93.    All above averments are incorporated herein by reference.

94.    Harmon Law violated the FDCPA by the following conduct:

    a) attempting to collect amounts not permitted by law (15 U.S.C. § 1692f(1));

    b) using unfair and unconscionable collection methods (15 U.S.C. § 1692f);

    c) giving a false impression of the character, amount, or legal status of the alleged debt (15 U.S.C. § 1692e(2));

    d) using false or deceptive collection methods (15 U.S.C. § 1692e(5));

    e) making threats to take action which cannot legally be taken (15 U.S.C. § 1692(e)(10)); and

    f) failing to state "the amount of the debt" as required by 15 U.S.C. § 1692g(a)(1).

95.    Ms. Pettway, Ms. Hubbard and members of the FDCPA Class are entitled to relief available under the FDCPA, 15 U.S.C. § 1692k.

## Count II: Declaratory Judgment for Violations of Massachusetts Debt Collection Law

96.     All above averments are incorporated herein by reference.

97.     Harmon Law violated M.G.L. c. 93 §49, by attempting to collect a debt in an unfair, deceptive or unreasonable manner.  A violation of M.G.L. c. 93 § 49 is also a violation of M.G.L. c. 93A.

98.     Ms. Pettway, Ms. Hubbard and members of each Class have suffered damages by virtue of Harmon Law's violations.

99.     Ms. Pettway, Ms. Hubbard and members of each Class are entitled to a declaratory judgment that Harmon Law's practices are unlawful.

## Count III: Chapter 93A

100.    All above averments are incorporated herein by reference.

101.    Harmon Law has violated M.G.L. c. 93A, §2 with respect to Ms. Pettway, Ms. Hubbard and each class member.  Said violations include, without limitation:

1)      By seeking to collect attorney's fees before such fees are earned and at a time when such fees are not legally due and owing;

20

2)      By seeking to collect attorney's fees in excess of the amounts legally permitted under loan contracts;

3)      By seeking to collect sheriff service fees and certified mail fees in excess of the amounts actually paid for said items;

4)      By falsely representing the nature, character or amount of the debt sought to be collected;

5)      By failing to communicate the "amount of the debt" as required by 15 U.S.C. § 1692g(a)(1).

102.    Harmon Law's conduct violates M.G.L. c. 93 § 49, and, therefore are per se violations of M.G.L. c. 93A, §2.

103.    Harmon Law's conduct was willful or knowing within the meaning of M.G.L. c. 93A, §2.

104.    Ms. Pettway, Ms. Hubbard and each class member has suffered damages by virtue of Harmon Law's violations.

105.    Harmon Law's refusal to grant relief upon demand was in bad faith, with knowledge or reason to know that the acts or practices complained of violated M.G.L. c. 93A, §2.

## Count IV: Unjust Enrichment/Restitution

106.    All above averments are incorporated herein by reference.

107.    Harmon Law has collected amounts that are not due and owing by contract or under applicable law.

108.   Harmon Law has been unjustly enriched by its conduct at the expense of Ms. Pettway and Ms. Hubbard, members of the attorney's fee overcharge class, and members of the foreclosure costs overcharge class.

109.   Ms. Pettway, Ms. Hubbard, members of the attorney's fee overcharge class, and members of the foreclosure costs overcharge class are entitled to relief for unjust enrichment including, without limitation, restitution to the extent permitted by law and equity.

## Count V:  Intentional Misrepresentation

110.   All above averments are incorporated herein by reference.

111.   Harmon Law has represented to Ms. Pettway, Ms. Hubbard and Members of each Class that it is entitled to collect legal and other fees in excess of amounts legally due and owing.

112.   Harmon Law's representations concerning the right to collect such fees and charges were false.

113.   Harmon Law knew or should have known that such representations were false.

114.   Ms. Pettway, Ms. Hubbard, members of the attorney's fee overcharge class, and members of the foreclosure costs overcharge class relied on Harmon Law's false representations concerning its entitlement to collect such legal fees and padded charges and did pay such fees and charges to their detriment.

22

115.    Reliance was reasonable or justifiable in the circumstances.

116.    Ms. Pettway, Ms. Hubbard, members of the attorney's fee overcharge class, and members of the foreclosure costs overcharge class have suffered damages.

117.    Ms. Pettway, Ms. Hubbard, members of the attorney's fee overcharge class, and members of the foreclosure costs overcharge class are entitled to relief for intentional misrepresentation.

WHEREFORE, Ms. Pettway and Ms. Hubbard request that the Court certify each class and order the following relief against Defendant Harmon Law:

*For Ms. Pettway, Ms. Hubbard and the members of the FDCPA class:*

    a.    actual and statutory damages pursuant to 15 U.S.C. §1692k(2)(B);

*For Ms. Pettway, Ms. Hubbard, members of the attorney's fee overcharge class, and members of the foreclosure costs overcharge class:*

    b.    actual damages for misrepresentation;

    c.    declaratory judgment that Harmon Law's conduct violates Massachusetts law;

    e.    restitution based on Harmon Law's unjust enrichment;

    f.    disgorgement of Harmon Law's unjustly obtained funds;

*For Ms. Pettway, Hubbard and members of each class:*

    g.    an award of attorney's fees, litigation expenses and costs pursuant to 15 U.S.C. § 1692k(3) or under other applicable law; and

    h.    such other and further relief as is appropriate.

Respectfully submitted,
By her attorneys,

DATED:  8/15/03

23

Gary Klein (BBO No. 560769)
Elizabeth Ryan (BBO No.49632)
John Roddy (BBO No. 424240)
Grant & Roddy
44 School Street
Boston, MA  02108
(617) 248-8700

Stuart Rossman (BBO No.  430640)
Odette Williamson (BBO No. 634791)
National Consumer Law Center
77 Summer Street, 10th Floor
Boston, MA  02110
(617) 542-8010

## JURY DEMAND

Plaintiff demands trial by jury.

Gary Klein

2 4