# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| SHARON PETTWAY, and<br>MARSHA HUBBARD<br><br>individually and on behalf of all<br>others similarly situated,<br><br><br>Plaintiffs,<br><br>v.<br><br>HARMON LAW OFFICES, P.C.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.
03-10932-RGS

---

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

## INTRODUCTION

The Defendant, Harmon Law Offices, P.C. ("Harmon Law") is in the business of foreclosing residential mortgages in Massachusetts. The Plaintiffs, and the class of homeowners they seek to represent, are individuals who have sought, sometimes desperately, accurate information about how much they must pay to avoid foreclosure.

Plaintiffs have brought this action to challenge Harmon Law's uniform practice of using estimates of its own foreclosure fees and costs in its demands for payment. Plaintiffs contend, supported by the Seventh Circuit Court of Appeals, that the use of estimates, without more, violates the Fair Debt Collection Practices Act (FDCPA) by failing to accurately inform homeowners of the amount of the debt. 15 U.S.C. §§ 1692g(a)(1);

1692e(2)(A);  *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC*, 214 F.3d

872 (7th Cir. 2000).  Plaintiffs further contend that Harmon Law's use of a deeply flawed

process designed to generate "front-loaded" and "high-end" estimates either results in

collection of excessive amounts or frustrates homeowners' ability to reinstate their

mortgages entirely.  Harmon Law's deliberate overestimates violate the FDCPA, M.G.L. c.

93A, and give rise to other common law rights and remedies as set forth below.

Remarkably, Harmon Law seeks summary judgment in this matter even though it

acknowledges that it overestimated the amount claimed due from Ms. Pettway by $237.38

and from Ms. Hubbard by $4,220.53.[1]  [Defendant's Statement of Undisputed Material Facts

("Defendant's Statement") ¶¶  93, 114, 132.]   Indeed, during discovery, Harmon Law

conceded that the amount demanded from Ms. Hubbard was wrong.  [*See* Plaintiffs'

Statement of Undisputed Facts ("Plaintiffs' Statement") ¶ 77.]

Put simply, there is no dispute whatsoever that Plaintiffs were overcharged.  Only the

reasons for the overcharges are disputed.  For its part, Harmon Law contends "estimating

fees and costs is not an exact science, but that Harmon Law uses its best efforts to be as

accurate as possible."  [Defendant's Statement, ¶ 62.] Plaintiffs contend that the overcharges

result from institutionalized practices designed to overestimate foreclosure fees and costs.

[Plaintiffs' Statement, ¶¶ 23-39.] These practices benefit Harmon Law at the expense of

financially strapped homeowners.  These disputed facts prevent Summary Judgment from

being entered in favor of Harmon Law on any issue.

---

[1] Harmon Law refunded these amounts after the litigation was commenced.  Plaintiffs
contend that these amounts are partial refunds.  Harmon Law apparently considers $237.38
*de minimus*.  Plaintiffs contend that it is an amount that may be *de minimus* to Harmon Law,
but is hugely significant to a homeowner, in the midst of financial difficulties, struggling to
find a way to raise the money to reinstate the mortgage on the family home.

Plaintiffs, for their part, seek partial Summary Judgment solely on the issue of whether use of estimates, without additional current and accurate information, can ever satisfy the requirements of the FDCPA.  On this issue, Harmon Law posits that it must use estimates because it doesn't know when the borrower will actually pay off or reinstate its mortgage.  By this argument, Harmon asks this Court to ignore that more than four years ago in *Miller*, Chief Judge Posner of the Seventh Circuit Court of Appeals rejected this argument and concluded that unsupplemented estimates do not meet the strictures of the FDCPA.  He laid out a specific structure for foreclosure lawyers to provide information meeting the requirements of the law.   Summary Judgment thus should be entered for the Plaintiffs on liability under the FDCPA.

## STATEMENT OF FACTS

The facts relevant to this matter are set out at length with extensive citations to the record in Plaintiffs' Statement of Undisputed Facts submitted pursuant to Local Rule 56.1 and will not be repeated at length here.  Most importantly, as noted above, Harmon Law frankly acknowledges that it overestimated the amount claimed due from Plaintiff Pettway by $237.38 and from Plaintiff Hubbard by $4,220.53. [Defendant's Statement ¶¶  93, 114, 132.]   During discovery, Harmon Law conceded that the amount demanded from Ms. Hubbard was wrong.  [*See* Plaintiffs' Statement of Undisputed Facts [Plaintiffs' Statement ¶ 77.]  These overestimates led to overpayments and refunds that were delivered only after this case was commenced on May 6, 2003.

For financially strapped homeowners, the acknowledged overestimates at issue are significant.  For her part, Ms. Pettway struggled to raise the money to reinstate by taking on

extra work and borrowing from family members. [Plaintiffs' Statement ¶ 75.]  Ms. Hubbard

was forced to sell her home, a choice she was reluctant to make, in order to pay-off the debt.

[Plaintiffs' Statement ¶ 91.]

A good deal of Harmon Law's factual statement is irrelevant to the fee and cost

estimation processes that are at issue in this case.  Harmon Law appears to assert, for

example, that it could charge more for foreclosures if its clients allowed it to charge by the

hour. [Defendant's Statement, ¶¶ 41,42.]  Given that its entire foreclosure practice is based

on the use of automated forms and that Harmon Law did even keep time records in

connection with the Plaintiffs' files, these statements are self-serving and highly debateable,

but ultimately immaterial.  So too are the extended materials that Harmon Law provides

about the purported complexities of Harmon Law's foreclosure practices. [Defendant's

Statement, ¶¶ 17-32, 39,40.]

More relevantly, Harmon Law acknowledges that it uses estimates for its costs and

attorney's fees in making payment demands to mortgagors arguing, however, that it

provides the best estimates available. [Defendant's Statement, ¶ 62.]   Plaintiffs dispute this

contention, following extensive discovery. [Plaintiffs' Statement, ¶¶ 23-39.]   Indeed, Ms.

Hubbard was overcharged by a combined amount of more than $4,200 in connection with

estimates made to her. [Defendant's Statement ¶¶  93, 114, 132.]   Ms. Pettway, for her part,

was faced with a continually escalating series of demands, each of which turned out to be

based on overly aggressive assumptions about where the case would fall on a particular date

in Harmon Law's foreclosure continuum.  [Plaintiffs' Statement, ¶¶ 47-75;  *See*  Exhibits G,

I, M, P and S.]   By these estimates, Ms. Pettway was constantly forced to attempt to raise

more money than was legitimately due.

Harmon Law deliberately front-loads and overestimates its fees and costs for reasons that frustrate accuracy and overcompensate it for its work.  In Ms. Pettway's case for example, Harmon Law demanded $1,100 – representing 88% of the maximum legal fee that it could earn from its client for a completed foreclosure process – on a date just two weeks after it opened the file. [Plaintiffs' Statement, ¶¶ 48,58.] As of that date, Harmon Law had done little legal work other than preparing the form Complaint and forwarding it to the Land Court. [Plaintiffs' Statement, ¶ 55.] Harmon Law asserts that it estimated its fee based on work it anticipated doing before Ms. Pettway remitted funds.  However, even under Harmon Law's own analysis, it should only have demanded $975, rather than $1100 because it had over-aggressively projected how quickly the case would progress . [Plaintiffs' Statement, ¶¶ 59-60.]   Moreover, even at $975, the demand would not have accurately reflected a reasonable ratio to the total flat fee in light of the actual percentage of the foreclosure-related work that had been completed. [Plaintiffs' Statement, ¶ 61.][2]

On foreclosure-related costs, Harmon Law acknowledges using a cost-estimation timeline that is designed to generate "high-end" demands. [Plaintiffs' Statement, ¶¶ 25-28, 56.]   Harmon Law demands a sheriff service fee of $100,for example, even though it knows that standard sheriff service costs far less. [Plaintiffs' Statement, ¶¶ 27, 66, 81]

Moreover, Harmon Law makes excessive cost demands a profit center for its principal, attorney Mark Harmon.  It refers virtually all of its title work and auction business to other companies that are wholly owned by attorney Harmon. [Plaintiffs' Statement, ¶¶ 29-30.] These companies share space and bookkeeping services with Harmon Law, among

---

[2] The overestimates, of course, lead to self-fulfilling prophecies.  By requiring that borrowers like Ms. Pettway raise more than is actually due, borrowers have greater difficultly making early reinstatements.  This delay means that Harmon Law continues the foreclosure work and later asserts entitlement to an even greater fee.

other things.  *Id.* This business practice results in excessive demands and overpayments.  In the context of reinstatements and pay-offs, for example, the foreclosure auction is always canceled.  Commonwealth Auction, attorney Harmon's own firm, charges a substantial fee for canceling the auction.  That fee is higher than other auctioneers charge for the same services, including that of auctioneers that Harmon Law occasionally uses as an alternative to attorney Harmon's auction company. [Plaintiffs' Statement, ¶ 31.]

Harmon Law's practice of overestimating its fees and costs in its reinstatement and pay-off quotes saddles financially overwhelmed homeowners with extra debt.  It further imperils their homeownership because they may not be able to raise the excess amounts demanded to reinstate or pay-off their mortgage.  In this process, Harmon Law receives fees to which it is not entitled.

Finally, when Harmon Law does acknowledge a refund, its process for issuing that refund is flawed.  At no time in the process are homeowners told that they are making payments based on high-end estimates and are thus likely to be entitled to a refund.  Harmon Law knows that due to distress sales required to pay-off a mortgage balance, mortgagors making payments are going to be forced to relocate.  Despite this knowledge, Harmon Law never asks for a forwarding address in order to be able to properly deliver the refund. [Plaintiffs' Statement, ¶¶ 44-45.] Borrowers who move in order to prevent foreclosure, such as Ms. Hubbard, have refund checks mailed to their former property address, where they are not present to receive or negotiate the check.  When a check isn't cashed, the money belonging to the homeowner escheats to the state. [Plaintiffs' Statement, ¶ 46.]

# ARGUMENT

## I.   STANDARD OF REVIEW

Summary judgment is proper when the record demonstrates that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).  A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

## II.   THE COURT SHOULD DENY HARMON LAW'S MOTION FOR SUMMARY JUDGMENT.

### A.  As Described Above, the Essential Facts Relevant to Harmon Law's motion are Disputed.

The Court should deny Harmon Law's motion for Summary Judgment in its entirety. Harmon Law's legal arguments are fact-driven and these facts are plainly disputed with more than adequate citations to the record.

- Harmon Law asserts that its method of quoting legal fees and costs is reasonable.  As described above, Plaintiffs contend that Harmon Law deliberately overestimates its fees and costs resulting in excessive demands and overpayments.

- Harmon Law asserts that its attorney fees are authorized by contract or law. Plaintiffs assert that no contract or law justifies collection of amounts in excess of the amounts legitimately due.

- Harmon Law asserts that the refund process makes borrowers fully whole by refunding excessive costs and fees.  Plaintiffs assert that the refund process is deeply flawed.  Some excessive fees and costs are never refunded.  Moreover, borrowers are not informed that they may be entitled to a refund. Borrowers who have paid off their mortgage and moved without providing a forwarding address to Harmon Law typically do not receive a refund and the money is escheated to the Commonwealth.

**B. Harmon Law's Collection of Unearned Attorney Fees and Costs from Homeowners Facing Foreclosure Violated the Massachusetts Consumer Protection Statute, M.G.L. c. 93A, § 2.**

Unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful under M.G.L. c. 93A, § 2. The overall purpose of Chapter 93A is to provide an equitable balance in the relationship between consumers and businesses. *Purity Supreme, Inc. v. Attorney General*, 380 Mass. 762, 776 (1980).

The Attorney General's regulations under 940 C.M.R. § 7.07 further proscribe:

(2) Any knowingly false or misleading representation in any communication as to the character, extent or amount of the debt, or as to its status in any legal proceeding.

(6) Any representation that an existing obligation of a debtor may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges, if in fact such fees or charges may not legally be added to the existing obligation.

Harmon Law's policy of including unearned attorneys fees and costs in the reinstatement and pay-off form letters that it sends to borrowers is a violation of Chapter 93A. The Supreme Judicial Court, in *Commonwealth v. DeCotis*, specifically held that the collection of a fee without rendering service is an unfair trade practice. 366 Mass. 234 (1974). Harmon Law claims that the estimated fees and costs included in reinstatement and pay-off form letters are reasonable, and their collection is authorized by law or contract. This is inaccurate. With respect to attorneys fees, for example, Harmon Law overstates the attorneys' fees by using an internally created Foreclosure Fee Schedule that treats the bulk of the legal fees as earned during the first few days of the foreclosure process, even though very little work has been done. In the pay-off and reinstatement letters dated October 23, 2003 and October 29, 2002, for example, Harmon Law asserted a right to $1,100.00 in attorneys fees from Ms. Pettway, an amount which represented 88% of its maximum

8

possible fee if the case continued through to a foreclosure sale -- even though at the time of

the demand the matter had been open at Harmon Law for only two weeks.  No foreclosure

sale was in the offing and the majority of work associated with the case had not yet been

commenced.  No contract or law authorizes the collection of excessive fees from struggling

homeowners.

In addition, Harmon Law claims broadly that it has not "taken any action not usually

taken in the course of acceptable debt collection practice."  However, even if this were true,

the existence of an industry-wide practice is not a defense to unlawful conduct.  *See*

*DeCotis*, 366 Mass. at 241.


C.   **The Collection of Unearned Attorney Fees and Costs in Reinstatement and Pay-off Form Letters Unjustly Enriched Harmon Law and Plaintiffs are Entitled to Restitution.**

The collection of unauthorized and unearned fees and charges has unjustly

enriched Harmon Law at the expense of homeowners such as Ms. Pettway and Ms.

Hubbard.  *See Malonis v. Harrington*, 442 Mass. 692, 697 (2004).  While some of the excess

fees and costs are returned by refund, others are kept by Harmon Law because overcharges

are built into its fee and cost structure.  Harmon Law is unjustly enriched, for example, by

generating a fee schedule, as described above, that allows it to claim and retain the majority

of its full fee (88%) within a matter of two weeks after opening its file, especially when it

acknowledges, as it must, that it did not do 88% of the work at that stage of the case.  As to

costs, Harmon Law generates excessive auction cancellation fees, for example, by referring

business to another company wholly owned by Attorney Harmon.  These excessive costs are

never refunded.

### D. Harmon Law Intentionally Misrepresented that it was Authorized to Collect Unearned Fees and Costs.

During the course of the foreclosure process, Harmon Law falsely represented to Ms. Pettway and Ms. Hubbard that it was entitled to collect the unauthorized and unearned fees and costs.   To sustain a claim of misrepresentation, a plaintiff must show a false statement of a material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiff's detriment.  *Powell v. Rasmussen*, 355 Mass. 117, 118-19 (1969).  Ms. Pettway and Ms. Hubbard relied on such false representations as to the amount of the debt contained in various reinstatement and pay-off form letters.  Such reliance was reasonable given that Ms. Pettway and Ms. Hubbard have no independent means of verifying the legal fees and costs information provided by Harmon Law.   Harmon Law's legal argument relies on the legitimacy of its system for generating quotes, and the accuracy of its system of refunding overstated fees and costs, all grounded in  facts which are in dispute.


### III.   HARMON LAW VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT BY PROVIDING LOAN REINSTATEMENT AND PAY-OFF STATEMENTS THAT INCLUDED ESTIMATES OF UNEARNED FEES AND COSTS.  SUMMARY JUDGMENT AS TO LIABILITY IS PROPER FOR THE PLAINTIFFS ON THIS LIMITED ISSUE.

Plaintiffs' motion for summary judgment is based on a narrow set of undisputed facts:

- In response to borrowers' requests for reinstatement and pay-off balances, Harmon Law generates form letters, that among other items, list a lump-sum amount of "Legal Fees and Costs."

- The quoted legal fees and costs are estimated through a future date.

- The estimate includes actual costs incurred as of the date of the statement and costs that are anticipated but unearned as of the date of the letter.  The estimates used are "high-end estimates" of the eventual cost of the item or service.

- Ms. Pettway and Ms. Hubbard received reinstatement and pay-off form letters generated using Harmon Law's standard procedure.

- Both Ms. Pettway and Ms. Hubbard received refunds of excess charges paid, though not until they commenced litigation.

- Harmon Law acknowledges that it sent Plaintiff Hubbard at least one letter that overstated the amount due.

As a matter of law, Harmon Law violated the FDCPA by including estimated fees and costs in reinstatement and pay-off form letters.  Specifically, Harmon Law violated the FDCPA by: 1) attempting to collect amounts not permitted by law (15 U.S.C. § 1692f(1); using fair and unconscionable collection methods (15 U.S.C. § 1692f); giving a false impression of the character, amount, or legal status of the alleged debt (15 U.S.C. § 1692e(2); using false or deceptive collection methods (15 U.S.C. § 1692e(10); and failing to state the amount of the debt as required by 15 U.S.C. § 1692g(a)(1).

### A.  The FDCPA was Enacted to Protect the Least Sophisticated Consumer from Deceptive and Abusive Debt Collection Practices.

The FDCPA is a "landmark piece of consumer credit legislation designed to eliminate abusive, deceptive, and other unfair debt collection practices."  *Arruda v. Sears Roebuck & Co.*, 310 F.3d 13, 22 (1st Cir. 2002).  The statute broadly prohibits unfair and unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt.  *See Heintz v. Jenkins*, 514 U.S. 291, 292 (1995).

As is consistent with the other four titles of the Federal Consumer Credit Protection Act, the FDCPA is a remedial, strict liability statute that must be construed liberally.  *See*

*Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2d Cir. 1996); *In re Hart*, 246 B.R. at 729. Under a strict liability standard, the consumer need not show intentional conduct by the debt collector to be entitled to damages. *Russell,* 74 F.3d at 33. Nor is proof of deception or actual damages necessary to obtain its statutory remedies. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 780 (9th Cir. 1982). Whether the consumer owes the debt has no bearing on a suit brought pursuant to the FDCPA. Id. at 777. As the FDCPA is a strict liability statute, proof of one violation is sufficient to support summary judgment for the plaintiff. *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990).

Whether a communication or conduct violates the FDCPA is determined by analyzing it from the perspective of the "least sophisticated debtor." *Clomon v. Jackson,* 998 F.2d 1314, 1318 (2d Cir. 1993). "The basic purpose of the least sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id.* The phrase describes a hypothetical consumer whose reasonable perception will determine if a collection message is deceptive or misleading. *In re Hart*, 246 B.R. at 730, quoting *Gammon v. GC Services L.P.,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard protects consumers who are below average sophistication or intelligence or are uninformed, naïve or trusting, while at the same time the reasonableness factor shields complying collectors from liability for unrealistic or peculiar interpretations of collection letters. *In re Maxwell*, 281 B.R. 101, 118 (Bankr. D. Mass. 2002), quoting *Gammon*, 27 F.3d at 1257. According to the Seventh Circuit, "anyway it is viewed, the standard is low, close to the bottom of the sophistication meter." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996).

**B. The Standard Reinstatement and Pay-off Form Letters sent by Harmon Law to Pettway and Hubbard are Communications Covered by the FDCPA.**

Communication is broadly defined by the FDCPA to mean the "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692 a(2); *see In re Hart*, 246 B.R. at 729. The plain language of the Act imposes no requirement that communication be limited only to collector initiated letters. See e.g., FTC Staff Commentary, § 803(2); *Brady v. The Credit Recovery Co., Inc.*, 160 F.3d 64, 67(1st Cir. 1998) (plain language of Act imposes no writing requirement on consumers who wish to dispute a debt under § 1692 e(8)).

In this case, the plain language of the Act covers any communication regarding the debt contained in the reinstatement and pay-off form letters sent by Harmon Law. The letters are not exempt from the Act's coverage simply because borrowers requested the information contained in the letters. Harmon Law's central purpose honoring borrowers' request for a pay-off or reinstatement balance is to collect the debt owed to their client. The reinstatement or pay-off letter makes it easier for borrowers to remit the amount Harmon Law claims is owed. In addition, the reinstatement and pay-off form letters include language that identifies the letters as communications under the FDCPA.[3] The Act speaks clearly and must be given its ordinary meaning. *See Brady*, 160 F.3d at 67.

---

[3] *See* Plaintiffs' Statement, Exhibits, G, I, M, P, & S. The language is similar to that required under § 1692e(11); under that section a collector is required to disclose in communication that the collector "is attempting to collect a debt and that any information obtained will be used for that purpose."

**C.  The Reinstatement and Pay-off Form Letters used by Harmon Law Violate 15 U.S.C. § 1692 g(a)(1) and 15 U.S.C. § 1692 e(2)(a) on their Face by Failing to State the Correct Amount of the Debt.**

One of the guiding principals underlying the FDCPA's protection of unsophisticated consumers is that every letter that collectors send should accurately state the amount of the debt.  See 15 U.S.C. § 1692e(2)(A); *Taylor v. Cavalry Investment, LLC*, 365 F.3d 572, 574 (7th Cir. 2004).  Section 1692g(a)(1) requires that the collector include the "amount of the debt" in communication with the debtor; section 1692e(2)(A) prohibits, among other items, the false representation of the amount of the debt.  The "amount of the debt" is the total amount due as of the date of the statement or collection letter.  *See  Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC*, 214 F.3d 872, 875-76 (7th Cir. 2000). The "amount of the debt" provision is designed to inform the unsophisticated debtor of what the obligation is, not what it could be in the future.  *See Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2002) (inclusion of anticipated but unawarded penalties in the amount claimed due a violation of section § 1692e).  Harmon Law's policy of including estimates, without additional explanation, violated these provisions.

The Seventh Circuit, in *Miller*, outlined the actions a law firm foreclosing on a mortgagor should take to accurately state the amount of the debt.  214 F.3d at 875.  The Court held that a law firm violated the FDCPA in its attempt to collect a mortgage debt by incorrectly stating the amount of the debt in its collection letter. *Id.*   The collection letter understated the total amount due by listing the unpaid principal balance of the loan; unpaid interest, late charges, escrow and other charges were not included.  The debtor was required to call the law firm to obtain a complete and accurate reinstatement or pay-off figure. *Id.*

The unpaid principal balance, the Court reasoned, is not the debt; it is only a part of the debt.  The collector must disclose the total amount due - principal, interest, and other charges - as of the date of the letter to meet the requirements of the Act.  *Id.*   Listing a toll-free telephone number did not substitute for listing the correct amount of the debt.  The Court noted,

> It is notorious that trying to get through to an 800 number is often a vexing and protracted undertaking, and anyway, unless the call is recorded, to authorize debt collectors to comply orally would be an invitation to just the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to.

Id.

Harmon Law's policy of including fees and costs that have yet to be incurred in the reinstatement and pay-off form letters it sends to borrowers fails to accurately state the amount of the debt.  It overstates the amount of the debt, saddling struggling homeowners like Ms. Pettway and Ms. Hubbard with extra costs that have not been legally incurred and are not due on the date of the letter.  Nor, if the anticipated costs are not incurred by the "good through" date, will the amount listed be accurate at the future date.   At a minimum, the FDCPA requires that  Harmon Law list the actual total amount due as of the date of the reinstatement or pay-off letter.  *See Veach*, 316 F.3d 690 at 692; *Miller*, 214 F.3d at 875-76. If Harmon Law insists that it must use estimates as of a date in the future, it should also include the current amount due so that the borrower can see the effect of delay on the reinstatement amount.  *Id.*

Moreover, Harmon Law is not excused from complying with the FDCPA simply because the amount of the debt may vary from day to day.  The Seventh Circuit noted that in such circumstances the collector satisfies its duty to accurately state the amount of the debt

by indicating the total amount due as of the date of the letter and noting in that letter that

additional amounts may come due before the borrower pays off the debt. *Miller*, 214 F.3d at

875-76. Only then may the collector provide a telephone number for the borrower to obtain

updated information.[4]

> **D. Harmon Law's Overstatement of the Amount of Costs Due in its Standard Reinstatement and Pay-off Form Letters is False, Misleading and Deceptive in violation of 15 U.S.C. § 1692e(2).**

Harmon Law's standard practice is to overstate the amount of legal fees and costs

that will be due in the event of a reinstatement or pay-off. The law firm regularly uses

"high-end estimates" of costs in quoting the amount it anticipates the borrower will owe

through the good through date. The demands contained in these form letters are false and

misrepresent the character and amount of the debt in violation of 15 U.S.C. §§ 1692e(2), (5)

and (10).

Section 1692e prohibits the use of false, deceptive, or misleading representations to

collect a debt including,

> (2)   The false representation of –
> (A) the character, amount, or legal status of the debt;
> (B) any services rendered or compensation which may be lawfully received
> by any debt collector for the collection of a debt.

Overstating the amount of the debt, or demanding amounts that are not owed, is false

and misleading. *See Shula v. Lawent*, 359 F.3d 489, 492 (7th Cir. 2004); *In re Maxwell,* 281

B.R. at 119. To imply, in a demand letter, that the borrower is liable for amounts that are

---

[4]  Unquestionably, Harmon Law has the capacity to provide regular updates as to the amount of the debt. The reinstatement and pay-off form letters state, "[i]f you contact this office immediately prior to the time you intend to mail or deliver the funds, we will provide you with the actual legal fees and costs at that time."

not due is coercive and violates 15 U.S.C. § 1692e (5), which prohibits threats to take any action that cannot legally be taken. *See In re Hart*, 246, B.R. at 730-31. Objectively false statements also violate 15 U.S.C. § 1692e (10) which prohibits false representation or deceptive means to collect a debt. *See Martin v. Sands*, 62 F.Supp.2d 196, 201 (D. Mass. 1999). Moreover, under § 1692e(10), a letter that is open to an inaccurate yet reasonable interpretation is deceptive as a matter of law. *Russell*, 74 F.3d at 36.

In this case, Harmon Law standard practice was to use high-end estimates when quoting costs in reinstatement or pay-off form letters. Such estimates routinely overstated the real cost of the service or item to be provided, but ensured that Harmon Law aggressively captured all of its out-of-pocket costs. For example, in accordance with the default amount set in Harmon Law's Cost Estimation Timeline, Ms. Hubbard was charged a $100 sheriff's fee for service of foreclosure related documents. The record indicates that the actual fee was $21.40.

The result of Harmon Law's standard quoting process was that even when plaintiffs reinstated or paid off their mortgage on the good through date, they did not owe the estimated amounts because the estimates were patently inflated. Both Ms. Pettway and Ms. Hubbard were owed substantial refunds. Compounding the problem, Harmon Law's refund process is deeply flawed as it did not refund all the inflated costs. And had this litigation not been filed, Harmon Law would never have found Ms. Hubbard in order to refund the substantial amount it owed her. The record is devoid of any indication that they attempted to find her.

In addition, the mere inclusion of a lump-sum total of actual and unearned costs in the form letter is misleading and gives a false characterization of the debt. *See* 15 U.S.C. §

1692e(2).  In *Fields v. Wilber Law Firm, P.C.,* the Seventh Circuit concluded that an unsophisticated consumer could be mislead by a dunning letter which contained a lump-sum amount.  383 F.3d 562, 566 (7th Cir. 2004).  The total amount, which was triple the original obligation, included unlisted attorney fees.  An unsophisticated consumer may assume he or she incurred all the charges, if for example, she lost the original bill.  *Id.*  The lump-sum total, without further explanation, hid the true character of the debt.  According to the Court,

> Even if attorneys' fees are authorized by contract, as in this case, and even if the fees are reasonable, debt collectors must still clearly and fairly communicate information about the amount of the debt to debtors.   This includes how the total amount due was determined if the demand for payment includes add-on expenses like attorneys' fees or collection costs

*Fields*, 383 F.3d at 565.

In this case, Harmon Law's standard practice was to include a lump-sum total of "legal fees and costs" in reinstatement and pay-off form letters.  An unsophisticated borrower would be mislead in several ways.  First, the form letters do not state that the lump-sum total includes both actual and unaccrued costs.  Second, even if the borrower knew that the total included unearned costs, he or she could not decipher which portion of the fee had been earned as of which date, and what portion of the fee is unaccrued and unearned.  This is critical, as it deprives financially strapped homeowners the option of reinstating or paying off their loans before many of the costs come due. The lump-sum total,without differentiating the estimates, hides the true character of the debt, impairing the borrower's ability to  assess the legitimacy of the debt.  *See Fields*, 383 F.3d at 566.

### E.  Harmon Law used Unfair and Unconscionable Collection Methods to Collect Unauthorized Fees in Violation of  15 U.S.C. §§ 1692f and 1692f(1).

Harmon Law violated the broad prohibitions in 15 U.S.C. § 1692f against using unfair and unconscionable collection methods; and § 1692f(1) when it collected fees and costs from the plaintiff that are not expressly authorized by any agreement or permitted by law.  *See In re Hart*, 246, B.R. at 730-31.  Harmon Law may collect only the amount legally owed by the borrower.  No contract or law expressly authorizes Harmon Law to demand and collect amounts that are not due or accrued.  *See In re Maxwell*, 281 B.R. at 119.  Courts have also routinely held that overstating the amount of the debt, or demanding amounts that are not owed, violates § 1692f.   *See e.g., Fields*, 383 F.3d at 566; *In re Hart*, 246, B.R. at 730.  Even a slight overstatement of a debt is an attempt to collect an amount not authorized by agreement or law.  *See Duffy v. Landberg*, 215 F.3d 871, 875 (8th Cir. 2000).

### F.  Harmon Law's Admitted Error is Overstating the Amount of Debt in Letters to Ms. Hubbard is a violation of the FDCPA Entitling Plaintiff to Summary Judgment.

Harmon Law acknowledges that the amounts it demanded from Ms. Hubbard were wrong. Based on this admission, Harmon Law has violated §§ 1692e, 1692f and 1692g(a)(1) by demanding amounts that were not owed in pay-off letters sent to Ms. Hubbard.  *See In re Maxwell*, 281 B.R. at 119 (servicer violated  §§ 1692e and 1692f  by demanding varying amounts which the debtor did not owe).  Indeed, Ms. Hubbard paid more than $4,200 in legal fees and costs that were not due at the time she paid off her mortgage loans and is entitled to summary judgment under the FDCPA.

**G.  Harmon Law has not Met its Burden to Establish the *Bona Fide* Error Defense.**

A collector is not liable under the FDCPA if it shows by a preponderance of the evidence that the violation was not intentional and resulted from a *bona fide* error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.  15 U.S.C. § 1692k(c).  The bona fide error defense applies only to clerical and factual errors. *Nielsen v. Dickerson*, 307 F. 3d 623, 640 (7th Cir. 2001); *Baker*, 677 F.2d at 779; In re *Maxwell*, 281 B.R. at 119.  Harmon Law's use of inflated estimates was not an error, but rather part of its standard practice and procedure.

Even if this court determines that the *bona fide* error defense is available for errors of legal judgment, the defendant still cannot sustain its burden.  Section 1692k(c) requires that Harmon Law prove that its violation was not intentional.   The relevant intent is Harmon Law's intent as to the act determined to be a violation of the FDCPA, not its intent to avoid a violation of the statute.  *See Nielsen*, 307 F. 3d at 641.  Harmon Law's intended to use estimates in quoting foreclosure fees and costs.

Moreover, the mistakes must not only be unintentional, but also reasonable.  *See Nielsen*, 307 F. 3d at 641 (citing *Hulshizer v. Global Credit Servs., Inc*., 728 F.2d. 1037, 1038) (8th Cir. 1984) (no basis to invoke the bona fide error defense where language of statute was unambiguous and collector's disregard of language was undisputed).  Harmon Law was on clear notice, based on *Miller* and other decisions, that its practice of estimating reinstatement and pay-off balances, without providing violated the FDCPA. The *Miller* case, decided over four years ago, is directly on point and applicable to Harmon Law's practice.

IV.    **Conclusion**

For the reasons stated above, plaintiffs respectfully request this Court to grant

Plaintiffs' Motion for Partial Summary Judgment on its claims under the Fair Debt

Collection Practices Act, and deny Defendant's Motion for Summary Judgment.


Respectfully submitted,


Sharon Pettway and Marsha Hubbard
By their attorneys,


/s/ Gary Klein
Gary Klein (BBO# 560769)
Shennan Kavanagh (BBO# 655174)
Roddy Klein & Ryan
727 Atlantic Avenue, 2nd Floor
Boston, Massachusetts 02111
p. 617.357.5500 ext. 15
f. 617.357.5030
klein@roddykleinryan.com


/s/ Stuart Rossman
Stuart Rossman (BBO #430640)
Odette Williamson (BBO #634791)
National Consumer Law Center
77 Summer Street, 10th Floor
Boston, Massachusetts 02110
p. 617.542.8010
f.  617.542.8028

CERTIFICATE OF SERVICE

I, Shennan Kavanagh, hereby certify that this 10th day of March, 2005, I served the foregoing document by causing true and correct copies to be sent by first class mail, postage prepaid, to the following persons:

Evan Lawson
Kathryn Pieczarka
Lawson & Weitzen, LLP
88 Black Falcon Road, Suite 345
Boston, Massachusetts 02210


/s/ Shennan Kavanagh
Dated: March 10, 2005                                   Shennan Kavanagh